**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

ANGELO R. M.,[1]

    Plaintiff,

        v.                               CIVIL NO. 3:19cv853

ANDREW M. SAUL,[2]
Commissioner of Social Security,

    Defendant.

**REPORT AND RECOMMENDATION**

This is an action seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") and supplemental security benefits ("SSI") under the Social Security Act (the "Act"). Angelo R. M. ("Plaintiff"), forty-four years old at the time of his benefits application, has a high school education and previously worked as an internal security manager, special security officer, and armed security guard. (R. at 26.) Plaintiff suffers from diabetes, major joint dysfunction of the shoulder, osteoarthrosis, and allied disorders. (R. at 20.) Plaintiff asserts that his chronic shoulder and hand pain limits his ability to sit, stand, or walk continuously; limits his ability to lift items; and requires leg elevation. (Pl.'s Brief in Support of Pl.'s Mot. For Summ. J. at 2, ECF No. 13 ("Pl.'s Mem.").)

---

[1]    The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2]    On June 4, 2019, the United States Senate confirmed Andrew M. Saul to a six-year term as the Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Saul should be substituted for former Acting Commissioner Nancy A. Berryhill as the defendant in this matter.

On July 1, 2015, Plaintiff applied for both DIB and SSI. (R. at 18.) After Plaintiff's application was denied, and after exhausting his administrative remedies, Plaintiff seeks review of the Administrative Law Judge's ("ALJ") decision. This matter now comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the parties' cross motions for summary judgment, rendering the matter ripe for review.[3]

Plaintiff argues that the ALJ erred in her finding that Plaintiff is "not disabled." Plaintiff contends that the ALJ failed to provide "good reasons" for assigning limited weight to the opinions of Plaintiff's treating physicians and argues that the ALJ's analysis "amounts to nothing more than a cursory rejection of the [treating physicians'] opinions." (Pl.'s Mem. at 5-7.)

For the reasons set forth below, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 13) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 14) be GRANTED and the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

On July 1, 2015, Plaintiff filed for DIB and SSI, alleging disability due to diabetes, major joint dysfunction, osteoarthrosis, and allied disorders, with an alleged onset date of December 21, 2013. (R. at 18, 20.) The Social Security Administration ("SSA") denied Plaintiff's claim initially on September 29, 2015, and again upon reconsideration on March 1, 2016. (R. at 18.) Plaintiff requested a hearing before an ALJ, and the hearing was held on March 21, 2018. (R. at 18.) On June 19, 2018, the ALJ issued a written opinion, denying Plaintiff's claim and concluding that

---

[3] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and financial account numbers from this Report and Recommendation, and will further restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

2

Plaintiff did not qualify as disabled under the Act. (R. at 18-28.) On June 19, 2018, Plaintiff requested review of the ALJ's decision, and on September 17, 2019, the SSA Appeals Council denied this request, rendering the ALJ's decision as the final decision of the Commissioner. (R. at 1-3.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court "will affirm the Social Security Administration's disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x 264, 266 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (alteration in original) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).

In considering the decision of the ALJ based on the record as a whole, the court must take into account "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493

F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). If substantial evidence in the record supports the ALJ's findings as to any fact, it is binding on the reviewing court regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 476. "A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the Court must reverse the decision. *See id*.

SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity ("RFC"), accounting for the most the claimant can do despite his physical and mental limitations. §§ 404.1545(a), 416.945(a). At step four, the ALJ assesses whether the claimant can perform his past work given his RFC. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. THE ALJ'S DECISION

On March 21, 2018, the ALJ held a hearing during which Plaintiff, represented by counsel, and a vocational expert testified. (R. at 36-86.) On June 19, 2018, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act. (R. at 18-28.)

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 18-28.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from his alleged onset date of December 21, 2013. (R. at 20.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: diabetes mellitus, major joint dysfunction, osteoarthrosis, and allied disorders. (R. at 20.) At step three, the ALJ determined that none of these impairments, individually or in combination, met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 21.) After step three, the ALJ determined Plaintiff's RFC based on an evaluation of the evidence, including Plaintiff's testimony and the findings of treating and examining health care providers. (R. at 21-26.) Based on this evidence, the ALJ determined that Plaintiff retained the ability to perform light work with the following limitations:

> [Plaintiff] can occasionally reach overhead, handle, and finger items bilaterally. [He] can occasionally balance. He can never work at unprotected heights or climb ladders, ropes, or scaffolds. In addition to normal breaks, he will be off task five percent of the time in an eight hour workday.

(R. at 21.)

Based on this determination, the ALJ then considered, at step four, whether Plaintiff could perform his past relevant work. (R. at 26.) In making this determination, the ALJ determined that Plaintiff's past work as an internal security manager, special security office, and armed security guard was classified as a "security officer" under DOT 372.667-034 in the Dictionary of Occupational Titles. (R. at 26.) Social Security Ruling ("SSR") 82-61 provides three possible tests

5

for determining whether or not a claimant retains the capacity to perform his past relevant work, based on (1) a broad generic, occupational classification of the past job; (2) the particular functional demands and job duties peculiar to an individual job as the claimant actually performed it; or (3) the functional demands and job duties of the job as ordinarily required by employers throughout the national economy. SSR 82-61, 1982 WL 31387 (Jan. 1, 1982). Here, the ALJ reviewed the record, including the testimony of the vocational expert, and determined that Plaintiff was able to perform his past work as a security officer as it is actually and generally performed. (R. at 26.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act.

Nevertheless, the ALJ went on to step five and made an alternative finding, considering whether Plaintiff could perform jobs existing in significant numbers in the national economy. (R. at 26-27.) The ALJ weighed the testimony of the vocational expert, who opined that Plaintiff would be able to perform the requirements of representative occupations such as amusement barker, host, and school bus monitor. (R. at 27.) Apart from her step four conclusion, the ALJ determined that, given Plaintiff's age, education, work experience, RFC, and limitations, Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (R. at 27.) The ALJ, therefore, concluded that a finding of "not disabled" was appropriate.

### IV. ANALYSIS

Plaintiff's appeal to this Court challenges the ALJ's finding of "not disabled," arguing that the ALJ erred in formulating Plaintiff's RFC by assigning less than controlling weight to the treating source opinions of Drs. Stevens, Stonerock, and Maresh. (Pl.'s Mem. at 5-10.) Plaintiff contends that the ALJ's "entire analysis amounts to nothing more than a cursory rejection" of the physicians' opinions because the ALJ did not attempt to explain how the physicians' opinions

were not supported and did not cite to any contradictory evidence. (Pl.'s Mem. at 7.) Defendant responds that the ALJ addressed each medical opinion separately and the ALJ's explanation of how she weighed those opinions was in accordance with the relevant regulations and Fourth Circuit case law. (Def.'s Mot. Summ. J. & Br. in Supp. Thereof at 9-10, ECF No. 14 ("Def.'s Mem.").) For the reasons set forth below, the Court finds that the ALJ did not err in her assessment of the physicians' opinions.

During the sequential analysis, the ALJ must analyze any developed medical evidence such as expert evaluations. §§ 404.1512, 404.1527, 416.912, 416.927. These expert evaluations may include medical opinions, including those from Plaintiff's treating physicians, consultative examiners, and other sources. *See* §§ 404.1527(c)(2), 416.927(c)(2). A treating physician's opinion must be given controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques. §§ 404.1527(c)(2), 416.927(c)(2); *Craig*, 76 F.3d at 590; SSR 96-2p, 1996 WL 374188 (July 2, 1996). However, the regulations do not require the ALJ to accept opinions from a treating physician when the physician's opinion is inconsistent with other evidence or when it is not otherwise well supported. §§ 404.1527(c)(2), (d)(3), (e), 416.927(c)(2), (d)(3), (e). Moreover, if a physician's opinion is "not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590. Further, the regulations do not require that the ALJ accept opinions from a treating source in *every* situation, *e.g.*, when the source opines on the issue of whether the claimant is disabled for purposes of employment—an issue reserved for the Commissioner—or when the opinion otherwise lacks support. §§ 404.1527(c), (d), 416.927(c), (d). Generally, a reviewing court should not disturb an ALJ's decision regarding the weight given to a medical opinion "absent some indication that the ALJ has 'dredged up specious inconsistencies,' or has failed to give a sufficient

reason for the weight afforded a particular opinion." *Dunn*, 607 F. App'x at 267 (citing *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)).

If a medical opinion is not assigned controlling weight by the ALJ, then the ALJ assesses the weight of the opinion by considering the following "non-exclusive list": (1) the length of the treating source relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability based upon the medical record; (4) consistency between the opinion and the medical record; (5) any specialization on the part of the treating source; and (6) any other relevant factors brought to the ALJ's attention which tend to support or contradict the medical opinion. §§ 404.1527(c), 416.927(c); *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006).

In formulating Plaintiff's RFC, the ALJ in the instant case reviewed testimony of both Plaintiff and his mother; Plaintiff's medical records from Mary Washington Hospital, MCV, Northern Neck Free Health Clinic, and Rappahannock General Hospital, including Plaintiff's treatment history and documented clinical and examination findings; and the impairment questionnaires submitted by Drs. Stevens, Stonerock, and Maresh. (R. at 22-25, 374, 494, 497, 679.) The ALJ began with an overview of Plaintiff's testimony, considering Plaintiff's statements regarding the severity of his limitations and Plaintiff's reported daily activities. (R. at 22-25.) The ALJ acknowledged Plaintiff's alleged pain in his rotator cuffs, ankles, and hands, and reviewed Plaintiff's testimony regarding his ability to "walk no more than one block before needing to sit down and relax, stand less than one hours, and sit for less than one hour." (R. at 22.) The ALJ also discussed Plaintiff's claimed ability to lift "no more than 10 pounds of weight," "get dressed with assistance, take a short walk, drive short distances to the grocery store, shop for groceries, and sit

with his feet up." (R. at 22.) The ALJ acknowledged Plaintiff's mother's testimony that Plaintiff became confused when making breakfast one morning and used water instead of milk. (R. at 22.)

The ALJ compared the testimony of Plaintiff and his mother with the findings contained within Plaintiff's medical records, including the impairment questionnaires completed by Drs. Stevens, Stonerock, and Maresh. (R. at 23-25.) The ALJ ultimately concluded that Plaintiff's impairments could reasonably be expected to cause his symptoms, but that his statements concerning the intensity, persistence, and limiting effects of his symptoms are not entirely consistent with the medical evidence in the record. (R. at 23.)

In formulating Plaintiff's RFC, the ALJ also considered the impairment questionnaires completed by Drs. Stevens, Stonerock, and Maresh, which outlined Plaintiff's symptoms, pain, medications, and physical limitations. (R. at 353, 359, 529.) Drs. Stevens, Stonerock, and Maresh provided treatment to Plaintiff from 2014 to 2017 and separately provided opinions regarding Plaintiff's ability to perform certain activities during an eight-hour workday. (R. at 355-57, 360-61, 531-33.)

Dr. Mark Stevens provided treatment to Plaintiff from April 14, 2014 to June 9, 2015. (R. at 529.) In June 2015, Dr. Stevens completed an impairment questionnaire. (R. at 529-33.) In the questionnaire, Dr. Stevens described Plaintiff's pain as "chronic" and "constant" and indicated that "movement" precipitated and/or aggravated Plaintiff's pain. (R. at 530.) Dr. Stevens opined that, in an eight-hour workday, Plaintiff can sit, stand, or walk for less than one hour total. (R. at 531.) Dr. Stevens further provided that it was medically necessary for Plaintiff to elevate both of his legs to waist level while sitting. (R. at 531.) According to Dr. Stevens, Plaintiff could occasionally lift up to five pounds and could never or rarely carry any weight. (R. at 531.) Dr. Stevens provided that Plaintiff could never or rarely perform the following activities in an eight-hour workday:

grasp, turn, and twist objects, use fingers for fine manipulations, or use arms for reaching, including overhead. (R. at 532.) Dr. Stevens concluded that, as a result of Plaintiff's impairments, Plaintiff was likely to be absent from work "more than three times a month." (R. at 533.)

Dr. Stonerock, who treated Plaintiff from April 14, 2014 to October 17, 2017, completed an impairment questionnaire as well. (R. at 353-56.) According to Dr. Stonerock, Plaintiff experienced "daily constant" pain that got "better with massage [and] meds [and] worse with movement." (R. at 354.) Dr. Stonerock opined that Plaintiff could perform a job in a seated position for four hours, could perform a job standing or walking for less than one hour and needed to get up from a seated position every two hours, returning after a ten-minute break. (R. at 355.) The questionnaire further provided that it was medically necessary for Plaintiff to elevate his left leg six inches or less for fifteen minutes every two hours. (R. at 355.) According to Dr. Stonerock, Plaintiff could occasionally lift and carry up to ten pounds, but had significant limitations in reaching, handling, or fingering. (R. at 355-56.) Dr. Stonerock provided that Plaintiff could occasionally perform the following activities in an eight-hour workday: grasp, turn, and twist objects, use fingers for fine manipulations, or use arms for reaching, including overhead. (R. at 356.) Dr. Stonerock concluded that, as a result of Plaintiff's impairments, Plaintiff was likely to be absent from work two to three times a month and further provided that Plaintiff was "severely limited." (R. at 357.)

Dr. Charles Maresh, who began treating Plaintiff in April 2014, also completed a questionnaire. (R. at 359-62.) Dr. Maresh limited Plaintiff to no more than forty-five minutes of sitting and ten minutes of standing at a time. (R. at 360.) Dr. Maresh opined that Plaintiff could rarely lift less than ten pounds, could occasionally twist, rarely stoop, crouch, and climb stairs, and has significant limitations with reaching, handling, or fingering. (R. at 361.)

10

In addition to assessing the impairment questionnaires submitted by Drs. Stevens, Stonerock, and Maresh, the ALJ also reviewed other medical evidence documents, including Plaintiff's hospital records from Mary Washington Hospital from July 2014, follow-up clinical studies from August 2014, orthopedic assessments from November 2014, endocrinology reports from February 2015, occupational therapy notes from April 2015, and additional examination reports dated through 2018. (R. at 23-24, 374, 376, 451, 454, 487, 561, 752.) Despite being briefly hospitalized in July 2014 due to a hypoglycemic episode, Plaintiff's admission documents show that he was in no acute distress, had no need for an "extensive workup" like an EEG or MRI, exhibited normal range of motion in his extremities, and displayed no contraindication requiring Plaintiff to remain at the hospital. (R. at 374-77.) Upon discharge from Mary Washington Hospital, Dr. Moses Kear limited Plaintiff's management to outpatient treatment, including an endocrinology consultation and additional testing. (R. at 375.) Following Plaintiff's brief hospitalization, clinical examination records from August 2014 and January 2015 reveal Plaintiff suffered from rotator cuff tendinopathy, AC joint arthropathy, mild external impingement/subacromial bursitis, an undersurface partial tear, vascular calcifications, and mild soft tissue swelling in Plaintiff's hand. (R. at 434, 471.) Despite these impairments, radiology diagnostics from January 2015 revealed "no definite radiographic signs of inflammatory arthropathy," mineralization to be within normal limits, and soft tissue swelling over the metacarpal phalangeal joints to be "mild." (R. at 471.) Moreover, endocrinology records from February 2015 note Plaintiff's musculoskeletal status with "[n]o tenderness, [n]o swelling, [n]o deformity, [and] normal gait." (R. at 454.) Examination reports from August 2016 note a "normal" appearance in the joint spaces of Plaintiff's hand. (R. at 750.)

The ALJ also observed that Plaintiff struggled to comply with the treatment prescribed by his physicians. For example, multiple treatment records indicate that Plaintiff's examining physicians recommended physical therapy to help achieve a better range of motion. (R. at 487, 561, 572, 632.) Despite such recommendation, however, Plaintiff appeared to miss appointments, stating that he believed "therapy is not the answer" and instead suggested he undergo surgery. (R. at 561, 637.) Medical records also reveal Plaintiff's non-compliance with his diabetes management. (R. at 451, 587, 714.) Treating examiners at MCV noted that Plaintiff's "significant uncontrolled diabetes could account" for Plaintiff's "symptoms and signs." (R. at 487.) Despite such a finding, Plaintiff's endocrinology records from February 2015 note that Plaintiff "has not seen an Endocrinologist in a long time" and "has not changed any pump settings since his doctor set them 3 years ago." (R. at 451.) Plaintiff continued to be noncompliant with his diabetes care, by failing to "do a split day to assess [his] basal," and having dietary indiscretions, like skipping meals. (R. at 587, 714.)

Given the clinical evidence, including Plaintiff's treatment history, and Plaintiff's reported daily activities, the ALJ determined that the findings made by Drs. Stevens, Stonerock, and Maresh within the impairment questionnaires were not supported by Plaintiff's medical record and were inconsistent with other substantial evidence. The ALJ therefore assigned the opinions of Drs. Stevens, Stonerock, and Maresh "no more than limited weight." *See Craig,* 76 F.3d at 590; *see also* §§ 404.1527(c), 416.927(c). The ALJ explained her reasoning, stating that the opinions "are not congruent with the grossly conservative and outpatient treatment history, the documented clinical and examination findings of no more than moderate upper extremity symptoms, [and] the claimant's stated capabilities." (R. at 25.) The ALJ further acknowledged the treating physicians'

opinions regarding Plaintiff's ability to do work and noted that "employability remains an issue reserved for the commissioner." (R. at 25.)

"We must defer to the ALJ's assignments of weight unless they are not supported by substantial evidence." *Dunn*, 607 F. App'x at 271 (citing *Hancock*, 667 F.3d at 472). As already noted, in reviewing whether substantial evidence supports the findings of the ALJ, "we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." *Johnson*, 434 F.3d at 653 (alteration in original).

Inconsistencies between the objective medical evidence in the record and the opinions of Drs. Stevens, Stonerock, and Maresh support the ALJ's assignment of weight to these physicians' opinions. The ALJ did not err in giving no more than limited weight to the opinions of Drs. Stevens, Stonerock, and Maresh because (1) Plaintiff's medical records show that he received conservative treatment; (2) despite Plaintiff's conservative treatment, he remained noncompliant; (3) Plaintiff's reported ability to perform, in at least some capacity, daily activities of life are inconsistent with the opinions of Drs. Stevens, Stonerock, and Maresh; and (4) internal inconsistencies and inconsistencies among the opinions of Drs. Stevens, Stonerock, and Maresh are present. Based on each of these factors, substantial evidence supports the ALJ's assignment of weight.

First, the ALJ scrutinized Plaintiff's medical record and treatment notes, which revealed that Plaintiff was in no acute distress, exhibited normal range of motion in his extremities, had mild soft tissue swelling over his metacarpal phalangeal joints, and had no tenderness, swelling, or deformity in his musculoskeletal status. (R. at 374-77, 454, 471.) Given these symptoms, Plaintiff only received conservative medical treatments. Due to such conservative treatments, the

ALJ determined that Drs. Stevens, Stonerock, and Maresh's opinions lacked consistency with the record as a whole. (R. at 24.)

The record supports a finding that Plaintiff's treatment was "conservative, routine, and outpatient." (R. at 24.) Indeed, an ALJ may consider the treatments used to alleviate a claimant's symptoms to determine the extent of his impairments. §§ 404.1529(c)(3)(iv)-(v), 416.929(c)(3)(iv)-(v). If the claimant requires only conservative treatment, an ALJ is reasonable in holding that the alleged disability lacks the seriousness that the claimant alleges. *Dunn*, 607 F. App'x at 274-75. Plaintiff's treatment providers primarily prescribed noninvasive, routine treatment, including physical therapy, outpatient monitoring, and dietary restrictions to treat Plaintiff's ailments. (R. at 24, 487, 572, 587, 714.)

Second, despite Plaintiff's non-invasive, conservative treatment, the ALJ observed that Plaintiff was at times non-compliant. "[T]o get benefits, you must follow treatment prescribed by your medical source(s) if this treatment can restore your ability to work . . . . If you do not follow the prescribed treatment without a good reason, [the SSA] will not find you disabled." §§ 404.1530(a)-(b), 416.930(a)-(b). "Good reason" for not following prescribed treatment may include: the specific medical treatment is contrary to tenets of the claimant's religion; surgery was previously performed with unsuccessful results; the treatment is very risky for the claimant; or the treatment involves amputation of an extremity or major part of an extremity. §§ 404.1530(c), 416.930(c). As the ALJ noted in her decision, Plaintiff's medical records show that he has documented non-compliance with treatment recommendations. (R. at 24.) According to the ALJ's decision, Plaintiff "was provided hand therapy on an outpatient basis, but he was subsequently discharged after missing appointments." (R. at 24.) Further, the ALJ noted that Plaintiff's "treatment was complicated by . . . [his] documented non-compliance with diet recommendations."

(R. at 24.) Plaintiff did not sufficiently monitor his diet and repeatedly missed physical therapy appointments. (R. at 561, 587, 637, 714.)

The ALJ, therefore, could reasonably have determined that the severe symptoms both described by Plaintiff and included in Drs. Stevens, Stonerock, and Maresh's questionnaires were inconsistent with Plaintiff's behavior, including his failure to fully comply with his prescribed treatment. While the ALJ did note Plaintiff's inability to afford pump parts, which complicated Plaintiff's treatment, Plaintiff also failed to fully comply with meal recommendations for a diabetic diet and engage in recommended daily exercise. (R. at 24, 587.) The ALJ was entitled to rely on Plaintiff's non-compliance with the relatively conservative prescribed treatment to support her decision to give little weight to the opinions of Plaintiff's treating physicians.

Third, Plaintiff's reported daily activities, although somewhat limited, also support the ALJ's decision to afford Drs. Stevens, Stonerock, and Maresh's opinions no more than limited weight. Despite Plaintiff's "chronic symptoms," Plaintiff testified that he is still able to brush his teeth, get dressed with assistance, take short walks, drive short distances to the grocery store, shop for groceries, make change, and sit with his feet up. (R. at 24, 43-44, 56-57, 59.) Plaintiff also reported that he goes to church every Sunday. (R. at 60.) Plaintiff's reported daily activities of self-care, routine errands, short trips away from his home, and weekly church attendance align with the prescribed outpatient, conservative treatment and with the findings regarding the severity of Plaintiff's ailments within Plaintiff's medical records.

Finally, inconsistencies amongst the physicians' questionnaires support the ALJ's decision to afford only limited weight to the physicians' opinions. When the medical opinions of treating physicians are inconsistent with each other, the ALJ must evaluate and assign differing weight to properly analyze the evidence involved. §§ 404.1527(c)(2), (d), 416.927(c)(2), (d). Dr. Maresh

15

opined that Plaintiff could sit for no more than forty-five minutes and could stand for no more than ten minutes, Dr. Stevens opined that Plaintiff could sit and stand for less than one hour, and Dr. Stonerock opined that Plaintiff could remain seated for four hours, provided he took a ten-minute standing break every two hours. (R. at 355, 360, 531.) Further inconsistencies exist between the physicians' recommendations regarding Plaintiff's foot elevation—Dr. Stevens opined that it was medically necessary for Plaintiff to elevate both of his legs to waist level while sitting, while Dr. Stonerock opined that it was medically necessary for Plaintiff to elevate his left leg six inches or less. (R. at 355, 531.)

Moreover, as Defendant correctly underscores, there are internal inconsistencies within each physician's questionnaires. An ALJ may assign less weight to a medical opinion if there are internal inconsistencies within a physicians' assessment. *See Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000) (explaining that internal inconsistencies may provide good cause to deny controlling weight to a treating physician's opinion); *see Knight v. Chater*, 55 F. 3d 309, 314 (7th Cir. 1995) ("Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence."); *see also Geiger v. Astrue*, No. 2:11CV00055, 2013 WL 317564, at *5-6 (W.D. Va. Jan. 27, 2013). In his questionnaire, Dr. Stevens indicated that Plaintiff can sit, stand, and walk for less than one hour during an eight-hour workday. (R. at 531.) Within the same questionnaire, however, Dr. Stevens opined that Plaintiff must get up from a seated position every two hours. (R. at 531.) Dr. Stonerock's questionnaire presents a similar internal inconsistency— while indicating that Plaintiff can remain seated for four hours during a workday, Dr. Stonerock simultaneously opined that Plaintiff must "get up from a seated position" every two hours. (R. at 355.) These inconsistencies further support the ALJ's assignment of no more than limited weight to the opinions of Drs. Stevens, Stonerock, and Maresh.

In sum, Plaintiff's medical records reporting mild symptoms with conservative treatment; Plaintiff's noncompliance with the prescribed conservative treatment; Plaintiff's reported daily activities; and the inconsistencies among and within the impairment questionnaires support the ALJ's decision to afford no more than limited weight to the opinions of Drs. Stevens, Stonerock, and Maresh. Thus, substantial evidence in the record supports the ALJ's determination and accordingly, the ALJ did not err.

## V. CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 13) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 14) be GRANTED and the final decision of the Commissioner be AFFIRMED.

Let the Clerk file a copy of this Report and Recommendation electronically, notify all counsel of record and forward a copy to United States District Judge Robert E. Payne.

**NOTICE TO PARTIES**

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/ _____

Elizabeth W. Hanes
United States Magistrate Judge

Richmond, Virginia
Date: December 7, 2020